# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ARACELI SOBERANES, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 2:25-cv-00183 |
| CORDOBA LEGAL GROUP, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

NOW comes ARACELI SOBERANES ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CORDOBA LEGAL GROUP, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages under the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Wisconsin Credit Services Organization Act ("WCSOA") under Wis. Stat. § 422.501 *et seq.,* as well as for Breach of Fiduciary Duty, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant conducts business in the Eastern District of Wisconsin and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Wisconsin.

## PARTIES

4. Plaintiff is a consumer over 18 years of age residing in Kenosha, Wisconsin.

5. Defendant is a law firm, credit repair organization, and debt settlement provider that claims to assist consumers with their credit issues by offering their services in negotiating down the amount of debt owed so that consumers can address these debts and ultimately become debt free. Defendant is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 102 NE 2nd Street, Unit 252, Boca Raton, Florida 33432.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In approximately July of 2023, Plaintiff was interested in attempting to resolve a number of debts affecting her credit and overall financial well-being, thus she began looking into various credit repair organizations.

8. Plaintiff subsequently came upon Defendant and spoke with it about its services.

9. Upon speaking with Plaintiff, Defendant explained the nature of its services and that Plaintiff would make monthly payments to Defendant, with which Defendant would attempt to resolve the various debts Plaintiff would enroll in the program.

10. Defendant represented that although its services would have some impact on Plaintiff's credit, ultimately her credit would improve as Defendant secured settlements to lower Plaintiff's debt-to-income ratio.

11. The form in which Defendant presented its program further indicated to Plaintiff that it was a form of consolidation, in which Plaintiff would issue a monthly payment to Defendant and it would further distribute said payments among her creditors, such that Plaintiff's obligations would not be considered defaulted.

12. Plaintiff thereafter agreed to utilize Defendant's services, and entered into a contract for the provision of such services.

13. Plaintiff began making monthly payments to Defendant which initially totaled approximately $320 per month.

14. Although she was current on her obligations at the time she signed up, Defendant further instructed Plaintiff to cease making payments in connection with all enrolled obligations and instead divert those payments to Defendant.

15. Upon information and belief, the consequences of this aspect of the program were not adequately explained by Defendant prior to Plaintiff entering the program.

16. Plaintiff has maintained her payments for over a year.

17. Upon information and belief, throughout the life of the parties' dealings, Defendant routinely assessed various fees and other charges against Plaintiff in connection with services that were not being performed or which had not been completely performed.

18. Specifically, the 'settlement' and monthly fees Defendant has charged Plaintiff further diminished the savings she was told she could expect to experience, and further her credit did not improve as represented.

19. Furthermore, Defendant did not perform its services in the manner it initially represented it would to Plaintiff.

20. Specifically, Defendant had claimed that it would be 'consolidating' Plaintiff's accounts, and implied that it would make payments on her behalf to her creditors, which would prevent her accounts from being considered defaulted.

21. However, Plaintiff was dismayed to learn after she had signed up that Defendant was not actually making payments as initially presented to Plaintiff, that all three of the accounts she had enrolled into the program went to collections, and further that action had not been taken to resolve her accounts as promised.

22. This ultimately led to a significant diminishment of Plaintiff's credit score contrary to her wishes, and similarly left her in a worse financial position than had she not used Defendant's services.

23. When Plaintiff spoke with Defendant's representatives regarding the charged-off accounts, she was told, contrary to Defendant's earlier claims, that this was actually a feature of the program, and that Defendant could not perform work for Plaintiff unless the accounts went into collections.

24. Ultimately, Plaintiff has paid Defendant thousands of dollars to be left with a number of charged off accounts and significantly diminished credit score.

25. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

26. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, further out of pocket expenses, as well as numerous violations of

4

her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

27. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

30. At all relevant times, Defendant represented to Plaintiff, both directly and by implication, that successfully completing Defendant's program would, ultimately, result in the overall improvement of Plaintiff's credit history, at it would allow her to resolve obligations much faster than doing it otherwise which in turn improves her debt to income ratio and in turn improves her credit by reducing the overall debt load reflecting on her credit.

    a. **Violations of CROA § 1679b(a)**

31. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

5

32. Defendant violated the above provisions of the CROA through its generally deceptive representations regarding the nature of the services it would provide Plaintiff. Defendant advised that it would get to work promptly and consolidate Plaintiff's payments such that they would not be defaulted, yet subsequently failed to do so and allowed each account to go into collections, further diminishing Plaintiff's credit score and financial wellness.

33. Defendant further violated the above provisions of the CROA through its generally deceptive and misleading representation that it would be beneficial for Plaintiff to cease paying her creditors and instead divert those payments to Defendant. As demonstrated by the effects this course of action had – namely that the accounts were charged off and sent to collections, which further damaged Plaintiff's credit – this was not in any way actually beneficial for Plaintiff.

34. Defendant further violated the above provisions of the CROA through the deceptive and misleading manner in which it charges consumers fees in a manner designed to increase the number and amount of payments consumers make to Defendant for its services.

    b. **Violation of CROA § 1679b(b)**

35. The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

36. Defendant violated § 1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Upon information and belief, throughout the life of Plaintiff's payments, Defendant assessed certain fees that were not tied to the complete performance of the services it agreed to perform for Plaintiff.

    c. **Violation of CROA § 1679c**

37. The CROA, pursuant to 15 U.S.C. § 1679c, outlines the disclosures that must be provided to consumers prior to contracting with consumers as well as when and how such disclosures must be provided.

38. Defendant violated the above provision of the CROA through its failure to provide the requisite disclosures in the manner required by the CROA.

   d. **Violations of CROA § 1679d**

39. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

40. Defendant violated §§ 1679d(b)(4) through its failure to provide the requisite disclosure regarding Plaintiff's right to cancel or otherwise rescind the contract. Defendant's disclosure of the right to cancel is not in bold-face type, it is not in proximity to the space on the contract reserved for Plaintiff's signature, nor does it direct to an attached notice of cancellation.

   e. **Violation of CROA § 1679f(b)**

41. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

42. Defendant violated 15 U.S.C. § 1679f(b) through their attempt to obtain Plaintiff's waiver of the protections afforded under the CROA. Defendant's contracts contain numerous efforts to
7

obtain a waiver of Plaintiff's vital consumer protection rights protected by the CROA, including but not limited to an attempt to obtain a waiver of Plaintiff's right to assert claims for the manner in which Defendant marketed its services to consumers.

43. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, ARACELI SOBERANES, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

**COUNT II – VIOLATIONS OF THE WISCONSIN CREDIT SERVICES ORGANIZATION ACT**

44. Plaintiff restates and realleges paragraphs 1 through 43 as though fully set forth herein.

45. Plaintiff is a "buyer" as defined by Wis. Stat. § 422.501(1).

46. Defendant is a "credit services organization" as defined by Wis. Stat. § 422.501.

    **a. Violation of WCSOA § 422.503**

47. The WCSOA, under Wis. Stat. § 422.503, outlines a variety of conduct from which credit services organizations are prohibited from engaging in.

48. Pursuant to § 422.503(1)(c), a credit services organization cannot "make or use any untrue or misleading representations in the offer or sale of the services of the credit services organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization.

49. Defendant violated § 422.503(1)(c) in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### b. Violation of WCSOA § 422.504

50. The WCSOA, pursuant to Wis. Stat. § 422.504, outlines an information statement that must be provided by credit service organizations to buyers before buyers enter into any contracts.

51. Defendant violated § 422.504 by failing to provide the required information statement to Plaintiff prior to entering into the contract with Plaintiff.

### c. Violation of WCSOA § 422.505

52. The WCSOA, pursuant to Wis. Stat. § 422.505, requires that a credit service organization provide a buyer a conspicuous statement of their right to cancel a contract within **five** days of entering the contract.

53. Defendant violated § 422.505 by failing to include a statement noting that Plaintiff had a right to cancel the contract within **five** days of entering the contract.

### d. Violations of WCSOA § 422.506

54. The WCSOA, much like the CROA, prohibits credit service organizations from attempting to obtain a waiver of protections afforded under the WCSOA. *See* Wis. Stat. § 422.506.

55. Defendant violated § 422.506 of the WCSOA in much the same way it violated § 1679f(b) of the CROA.

WHEREFORE, Plaintiff, ARACELI SOBERANES, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Wis. Stat. § 425.305;

c. Awarding Plaintiff's costs and reasonable attorney fees pursuant to Wis. Stat. § 425.308; and,

d. Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT III – BREACH OF FIDUCIARY DUTY

56. Plaintiff restates and realleges paragraphs 1 through 55 as though fully set forth herein.

57. Defendant owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendant was purporting to provide legal services to Plaintiff, inherently rendering it her fiduciary with regards to the services it was agreeing to perform.

58. Defendant breached its fiduciary duty owed Plaintiff given the nature of the "services" it provided. Despite purporting to have Plaintiff's best interest in mind, Defendant caused Plaintiff significant hardship through its provision of objectively and unreasonably misguided advice. Defendant completely disregarded the fiduciary duties it owed Plaintiff, and Defendant's breach of such duty caused Plaintiff significant financial harm as well as emotional distress.

WHEREFORE, Plaintiff, ARACELI SOBERANES, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Enjoining Defendant from continuing its unlawful conduct; and,

f. Awarding any other relief as the Honorable Court deems just and appropriate

Dated: February 5, 2025

Respectfully submitted,

s/ *Nathan C. Volheim*
Nathan C. Volheim, Esq. #6302103
*Counsel for Plaintiff*
Admitted in the Eastern District of Wisconsin
Sulaiman Law Group, Ltd.
2500 South Highland Ave, Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com